# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| TAMMY RUSHER, | ) |
| | ) |
|   Plaintiff, | ) |
| | ) |
|   v. | )   Case No. 4:17-CV-1671 NAB |
| | ) |
| LIBERTY MUTUAL INSURANCE | ) |
| COMPANY, et al., | ) |
| | ) |
|   Defendants. | ) |

## **MEMORANDUM AND ORDER**

This diversity case involving underinsured motorist ("UIM") coverage is before the Court on Plaintiff's motion for partial summary judgment [Doc. 25], and Defendant's motion for summary judgment [Doc. 22], seeking a determination as to whether Plaintiff is entitled to underinsured motorist coverage under her insurance policy with Defendant. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). [Doc. 16.] The motions are fully briefed and the matter is ripe for disposition. For the following reasons, the Court will grant Defendant's motion and deny Plaintiff's motion.

**I. Background**

The parties have stipulated that the facts recited here are undisputed for the purposes of summary judgment. Plaintiff Tammy Rusher was injured in a single-vehicle accident while occupying a 2005 Hyundai Elantra owned by Plaintiff and operated by her daughter. The December 7, 2013, accident was caused by her daughter's negligence. LM General Insurance Company issued personal automobile policy No. AOS-248-469875-40 (the "Policy") to Tammy Schumann (Plaintiff's former name) and Jason Schumann. The policy was in full force and effect at the time of the accident, and provided Plaintiff and the involved Hyundai with the

insurance coverage set forth in the policy. Defendant tendered to Plaintiff the $25,000 in bodily injury liability coverage available under the Policy. Plaintiff demanded UIM coverage from Defendant in the amount of $500,000, which represented the policy limits. Defendant refused the demand for the stated reason that the vehicle involved in the accident was not an "underinsured motor vehicle" as defined in the Policy. Plaintiff filed this action in Missouri state court for declaratory judgment, breach of contract, and vexatious refusal to pay. Defendant removed the action to this Court based on diversity of citizenship.

## II. Summary Judgment Standard

The standards applicable to summary judgment motions are well settled, and they do not change when both parties have moved for summary judgment. *See Wermager v. Cormorant Twp. Bd.*, 716 F.2d 1211, 1214 (8th Cir. 1983); *Tower Rock Stone Co. v. Quarry & Allied Workers Local No. 830*, 918 F. Supp. 2d 902, 905 (E.D. Mo. 2013). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Hill v. Walker*, 737 F.3d 1209, 1216 (8th Cir. 2013). The movant "bears the initial responsibility of informing the district court of the basis for its motion" and must identify "those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quotation marks omitted). "On a motion for summary judgment, 'facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts.'" *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007) (internal quotation marks omitted)).

Where parties file cross-motions for summary judgment, each summary judgment motion must be evaluated independently to determine whether a genuine dispute of material fact exists and whether the movant is entitled to judgment as a matter of law. *Husinga v. Federal-Mogul Ignition Co.,* 519 F. Supp. 2d 929, 942 (S.D. Iowa 2007). "[T]he filing of cross motions for summary judgment does not necessarily indicate that there is no dispute as to a material fact, or have the effect of submitting the cause to a plenary determination on the merits." *Wermager*, 716 F.2d at 1214.

**III. Discussion**

State law governs the interpretation of insurance policies when federal jurisdiction is based on diversity of citizenship. *Secura Ins. v. Horizon Plumbing, Inc*. 670 F.3d 857, 861 (8th Cir. 2012). Missouri law governs this insurance contract. This Court is bound by the decisions of the Missouri Supreme Court regarding issues of substantive state law. *Owners Ins. Co. v. Hughes*, 712 F.3d 392, 393 (8th Cir. 2013). Decisions by the Missouri Court of Appeals may be used as "an indication of how the Missouri Supreme Court may rule," but the Court is not bound to follow these decisions. *Id.*

"Insurance policies are read as a whole, and the risk insured against is made up of both the general insuring agreement as well as the exclusions and definitions." *Todd v. Missouri United Sch. Ins. Council*, 223 S.W.3d 156, 163 (Mo. 2007) (en banc). In construing the terms of an insurance policy, Missouri courts apply "the meaning an ordinary person of average understanding would attach if purchasing insurance, and resolve[ ] ambiguities in favor of the insured." *Dutton v. Am. Family Mut. Ins. Co*., 454 S.W.3d 319, 322 (Mo. 2015). But, "[i]f the policy's language is unambiguous, it must be enforced as written." *Floyd-Tunnell v. Shelter Mut.*, 439 S.W.3d 215, 217 (Mo. 2014). Ambiguities arise when there is "duplicity,

indistinctness, or uncertainty in the meaning of the language in the policy. Language is ambiguous if it is reasonably open to different constructions." *Burns v. Smith*, 303 S.W.3d 505, 509 (Mo. 2010) (citation omitted). Ambiguity also arises where an insurance clause appears to furnish coverage but other provisions signal that such coverage is not provided. *Seeck v. Geico Gen. Ins. Co.*, 212 S.W.3d 129, 134 (Mo. 2007) (en banc). However, "[d]efinitions, exclusions, conditions and endorsements are necessary provisions in insurance policies. If they are clear and unambiguous within the context of the policy as a whole, they are enforceable." *Todd*, 223 S.W.3d at 163. Finally, a court must not "unreasonably distort the language of a policy or exercise inventive powers for the purpose of creating an ambiguity when none exists." *Todd*, 223 S.W.3d at 163; *see also Rodriguez v. Gen. Acc. Ins. Co. of Am.*, 808 S.W.2d 379, 382 (Mo. 1991) (en banc).

The UIM coverage endorsement of the Policy provides in relevant part as follows:

**INSURING AGREEMENT**

A.  We will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of an "underinsured motor vehicle" because of "bodily injury":
1.  sustained by an "insured"; and
2.  caused by an accident;

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the "underinsured motor vehicle".

\*\*\*

C.  "Underinsured motor vehicle" means a land motor vehicle or trailer of any type to which a bodily injury liability bond or policy applies at the time of the accident but its limit for bodily injury is less than the limit of liability for this coverage.

However, "underinsured motor vehicle" does not include any vehicle or equipment:
\*\*\*

2. Owned by or furnished or available for the regular use of you or any "family member".

*i. Parties' Arguments*

Plaintiff asserts that the plain language of the policy provides UIM coverage, and points to the stipulated facts offered by the parties, which state that the Policy "was in full force and effect, providing Tammy Rusher and the involved [vehicle] with the insurance coverage set forth in the policy, and the Policy contains UIM limits of $500,000." [Doc. 26 at 6]. Plaintiff, in further support of her position, relies not on the Policy's Insuring Agreement that describes available UIM coverage, but rather on one of the exclusions to UIM coverage. *Id*. Plaintiff points to an exclusion in the Policy that states:

> We do not provide Underinsured Motorists Coverage for "bodily injury" sustained:
>
> I. By an "insured" while "occupying", or when struck by, any motor vehicle owned by that "insured" which is not insured for this coverage under this policy.

In asserting that this coverage exclusion operates to extend UIM coverage to her, Plaintiff argues in the negative, stating that because the exclusion would deny coverage to an insured if the vehicle she occupied was **not** insured for UIM coverage under the Policy, then it must also stand for the reverse. Finally, Plaintiff argues in the alternative that the Policy is ambiguous as to whether UIM coverage is available, and because ambiguities must be resolved in an insured's favor, she is entitled to summary judgment. *Id*. at 7. In support of her position, Plaintiff cites to *Naeger v. Farmers Ins. Co., Inc*., 436 S.W.3d 654, 660-661 (Mo.App. E.D. 2014), which states that "[w]here an insurance policy promises the insured something at one point but then takes it away at another, there is ambiguity." Plaintiff asserts that an ordinary person of average understanding would read the exclusion in the Policy to promise UIM coverage to Plaintiff, and

5

that to the extent the definition of "underinsured motor vehicle" would deny her that same coverage, an ambiguity arises. [Doc. 32 at 6].

Meanwhile, Defendant asserts that the Policy "only provides UIM coverage for damages arising out of the use of an "underinsured motor vehicle," and that UIM damages are unavailable to Plaintiff because the Policy explicitly excludes vehicles that are "owned by . . . you"[1] from the definition of "underinsured motor vehicle." [Doc. 23 at 7]. Because the Hyundai involved in the single-vehicle accident was owned by Plaintiff, Defendant argues that it is clearly excluded from the definition of "underinsured motor vehicle," in the Policy, and thus, "the UIM coverage portion of the Policy [was] not triggered by the accident." *Id*.

    *ii. Analysis*

There is no genuine issue of material fact in dispute. Rather, the parties' dispute concerns whether the Policy provides UIM coverage under the circumstances surrounding the December 7, 2013, accident. Plaintiff asserts that the plain language of the Policy provides UIM coverage, as indicated by the parties' stipulated facts, which state that the Policy "was in full force and effect, providing Tammy Rusher and the involved [vehicle] with the insurance coverage set forth in the policy, and the Policy contains UIM limits of $500,000." This argument sidesteps the issue before the Court. No one disputes that the Policy was in effect, that Plaintiff and her vehicle were covered by the Policy, or that the Policy contains a UIM endorsement. The mere fact that Plaintiff purchased UIM coverage does not automatically mean that she is entitled to UIM coverage in every conceivable circumstance. The question is whether the Policy's UIM coverage is available to Plaintiff under the circumstances surrounding this particular accident.

---

[1] "You" is defined in the Policy as a named insured, and Plaintiff is listed as a named insured on the Declarations page of the Policy. [Doc. 27 at 3].

In further support for her position that the plain language of the Policy provides UIM coverage, Plaintiff asserts that one of the exclusions to UIM coverage in the Policy can actually be read to extend coverage to her for the accident. Plaintiff relies on an exclusion which states that Defendant "will not provide Underinsured Motorists Coverage for 'bodily injury' sustained by an 'insured' while 'occupying' . . . any motor vehicle owned by that 'insured' which is not insured for this coverage under this policy." When asserting that this coverage exclusion demonstrates that UIM coverage is available to her, Plaintiff draws a negative inference, stating that because the exclusion would deny coverage to an insured if the vehicle she occupied was **not** insured for UIM coverage under the Policy, then it must also stand for the reverse. Specifically, Plaintiff states that, "[s]aid another way, the Policy **does** provide UIM coverage where the vehicle **is** insured for UIM coverage . . . which it is in this instance."

Where the language of an insurance policy is unambiguous, it should be enforced as written. *See Peters v. Employers Mut. Cas. Co.*, 853 S.W.2d 300, 302 (Mo. 1993) (en banc). The language should be accorded its plain meaning. In asserting her negative reading of the exclusion at issue, Plaintiff is inviting the Court to distort the language of an unambiguous provision, and that is precisely what the Court cannot do. *Todd*, 223 S.W.3d at 163. Furthermore, Plaintiff is ignoring the Insuring Agreement of the UIM endorsement, which explains in what circumstances UIM coverage is granted under the Policy. The Insuring Agreement states that UIM coverage will be available to an insured who is injured in an accident involving an "underinsured motor vehicle." Plaintiff does not make any argument or provide any explanation as to how her vehicle could be considered an "underinsured motor vehicle" as defined in the Policy. Her argument focuses on one exclusion clause in the UIM endorsement, and essentially reads the definition of "underinsured motor vehicle" entirely out of the

agreement. However, well-settled Missouri law requires a court to evaluate the policy as a whole and not to interpret policy provisions in isolation. *See Seeck,* 212 S.W.3d at 133. "[C]ourts must also endeavor to give each provision a reasonable meaning and to avoid an interpretation that renders some provisions useless." *Munroe v. Continental Western Ins. Co.,* 735 F.3d 783, 787 (8th Cir. 2013). Plaintiff's argument would demote the definition of "underinsured motor vehicle," from a central policy provision to mere surplusage, and the Court cannot agree with her interpretation.

Furthermore, the Court does not agree that the exclusion clause Plaintiff relies on can be read or interpreted to provide UIM coverage. The clause does not grant coverage, but restricts it, and Plaintiff fails to explain how a policy exclusion can somehow operate to grant coverage to an insured. Additionally, a policy exclusion would seem irrelevant to a coverage dispute unless and until the insured first demonstrates that the accident falls within a policy's pertinent coverage grant so as to trigger coverage. *See Hawkeye-Security Ins.c Co. v. Davis*, 6 S.W.3d 419, 427 (Mo.App. S.D. 1999) (court will not analyze applicability of a coverage exclusion without first considering whether there was an insured event). Under the terms of the Policy, an accident does not trigger UIM coverage unless it involved an "underinsured motor vehicle," and Plaintiff does not explain how that prerequisite to coverage is met in this situation. Finally, though the undersigned has been unable to find any cases where a court was confronted with reasoning similar to Plaintiff's negative inference argument, Missouri courts have repeatedly interpreted similar "owned but not insured" exclusions in other contexts, and have found them to be unambiguous and enforceable as written. *See, e.g., Bush v. Shelter Mut. Ins. Co*., 412 S.W.3d 336, 340 (Mo.App. W.D. 2013).

The Court turns now to Defendant's argument. In its motion for summary judgment, Defendant argues that Plaintiff is not entitled to UIM coverage under the provisions of the Policy because the Hyundai does not meet the policy definition of an underinsured motor vehicle. The Policy clearly excludes from the definition of "underinsured motor vehicle" any vehicle owned by the insured. Because Plaintiff owned the vehicle involved in this single-car crash, Defendant asserts UIM coverage is unavailable to her for this accident. Defendant contends that the Policy definition should be enforced as written because it is clear and unambiguous and because there is no other policy provision that injects ambiguity into the meaning of what is a covered "underinsured motor vehicle."

There is no dispute that the Hyundai in which Plaintiff was a passenger is owned by Plaintiff, is available for her regular use, and is insured under the Policy. The Policy unambiguously states that UIM coverage is only available for damages arising out of the use of an "underinsured motor vehicle," and the policy clearly excludes from the definition of "underinsured motor vehicle" any vehicle owned by the insured.[2] Thus, the Policy's terms exclude the Hyundai from the Policy's definition of an "underinsured motor vehicle." This exclusion precludes coverage where, as here, a passenger is injured in a single-vehicle accident while riding in the insured vehicle. There is nothing ambiguous about the provision. And, as Defendant points out, the Missouri Court of Appeals has concluded that a similar household exclusion is unambiguous and enforceable. *See Ezell v. Columbia Ins. Co*., 942 S.W.2d 913, 914 (Mo.App.S.D. 1996); *see also Eaton v. State Farm Mut. Auto. Ins. Co.*, 849 S.W.3d, 189, 193-94 (Mo.App. E.D. 1993). Plaintiff asserts that *Ezell* is inapposite because it involved uninsured motorist coverage rather than UIM coverage. It is true that both *Ezell* and *Eaton* involved

---

[2] This type of exclusion is commonly found in insurance policies when describing the terms of uninsured motorist and UIM coverage, and is sometimes referred to as the "household exclusion." *See Eaton v. State Farm Mut. Auto. Ins. Co*., 849 S.W.2d 189, 192 (Mo.App. E.D. 1993).

uninsured motorist coverage, rather than UIM coverage, but that distinction would seem to make it even more likely that Missouri courts would uphold the exclusion in the UIM context. Missouri statutorily requires uninsured motorist coverage, yet there is no corresponding statutory requirement for UIM coverage. *See* Mo. Ann. Stat. § 379.203; *see also State Farm Mut. Auto. Ins. Co. v. Shahan*, 141 F.3d 819, 823 (8th Cir. 1998) (citing *Eaton* and upholding UIM household exclusion similar to the one at issue here because "[w]e may assume that Missouri courts would be even less receptive to exclusions on uninsured coverage, which is mandated by statute, than to those on underinsured coverage, which is purely optional.").[3] Because the language in the UIM endorsement of the Policy is unambiguous and unequivocally excludes UIM coverage to Plaintiff for the accident at issue here, summary judgment for Defendant is appropriate unless some other provision in the Policy serves to render the Policy ambiguous. *See Munroe*, 735 F.3d at 786.

Plaintiff claims that an ambiguity arises from the same "owned but not insured" exclusion clause discussed *supra*, which states in pertinent part, "We do not provide Underinsured Motorists Coverage for 'bodily injury' sustained [b]y an 'insured' while 'occupying' . . . any motor vehicle owned by that 'insured' which is not insured for this coverage under this policy." She asserts that an "indistinctness and/or uncertainty lies in the fact that the exclusion utilizes the term and concept of 'coverage' without clearly and unambiguously setting forth just exactly when the exclusion applies." [Doc. 26 at 8]. The Court disagrees that the provision is indistinct or uncertain. Indeed, and as Defendant points out, when Plaintiff relies on

---

[3] The Court notes that a survey of caselaw from around the country revealed that several state courts have found identical exclusions of family owned vehicles from the definition of "underinsured motor vehicle" to be clear, unambiguous, and enforceable. *See, e.g., Rivera v. American Family Ins. Group*, 292 P.3d 1181, 1183 (Colo.Ct.App. 2012); *Burton v. Kentucky Farm Bureau Mut. Ins. Co.*, 326 S.W.3d 474, 476 (Ky.Ct.App. 2010); *Fleet Nat'l Bank v. Aetna Ins. Co.*, 45 Conn.Supp. 355, 358 (Conn.Super.Ct. 1997); *Newkirk v. United Servs. Auto. Assoc.*, 388 Pa.Super. 54, 57 (Pa.Super.Ct. 1989); *Myers v. State Farm Mut. Auto. Ins. Co.*, 336 N.W.2d 288, 291 (Minn. 1983).

this same exclusion to assert that it extends UIM coverage to her for the accident, she describes quite clearly when the exclusion applies, stating, "[p]ursuant to this policy provision, when the insured is injured while occupying a vehicle owned by the insured, coverage would **not** be afforded if that vehicle was not insured for UIM coverage under the policy." *Id*. at 3 (emphasis in the original). This is precisely how the provision operates, and it is not ambiguous in the least. Moreover, Missouri courts have repeatedly held that similar "owned but not insured" UIM exclusions are unambiguous and enforceable. *See, e.g. Bush*, 412 S.W.3d at 340; *Loyd v. State Auto. Prop. & Cas. Co.*, 265 S.W.3d 901, 902 (Mo.App.W.D. 2008); *O'Driscoll v. Mutapcic*, 210 S.W.3d 368, 373 (Mo.App.E.D. 2006); *Vega v. Shelter Mut. Ins. Co.*, 162 S.W.3d 144, 150 (Mo.App.W.D. 2005). Finally, and perhaps more importantly, this exclusion provision is simply not applicable to the accident in this case. The exclusion at issue is only triggered where the vehicle occupied is not insured for UIM coverage under the policy, and it is undisputed that the vehicle involved in the accident was insured for UIM coverage. *See Clark v. Am. Family Mut. Ins. Co.*, 92 S.W.3d 198, 203 (Mo.App. E.D. 2002) (an insurance provision that does not apply cannot be used to create an ambiguity).

Plaintiff also asserts that an ordinary person of average understanding would read the exclusion in the Policy to promise UIM coverage to Plaintiff, and to the extent the definition of "underinsured motor vehicle" operates to deny her that same coverage, an ambiguity arises. [Doc. 32 at 6]. In support of this assertion, Plaintiff cites to *Naeger*, which states that "[w]here an insurance policy promises the insured something at one point but then takes it away at another, there is an ambiguity." 436 S.W.3d at 660-61. This language from *Naeger* represents a well-settled precept of Missouri law as it pertains to the interpretation of insurance policies. However, as the Missouri Supreme Court explained when examining this principle:

> Taken out of context, [this language] may be confusing. Insurance policies customarily include definitions that limit words used in granting coverage as well as exclusions that exclude from coverage otherwise covered risks. While a broad grant of coverage in one provision that is taken away by a more limited grant in another may be contradictory and inconsistent, the use of definitions and exclusions is not necessarily contradictory or inconsistent. The principle . . . is more accurately stated as follows: "Though it is the duty of the court to reconcile conflicting clauses in a policy so far as their language reasonably permits, when reconciliation fails, inconsistent provisions will be construed most favorably to the insured" . . . Definitions, exclusions, conditions and endorsements are necessary provisions in insurance policies. If they are clear and unambiguous within the context of the policy as a whole, they are enforceable.

*Todd*, 223 S.W.3d at 162-63 (internal citations omitted).

Reading the Policy as a whole, the Court finds that the exclusion clause at issue is not at odds with other provisions of the Policy. It is merely one of the many "[d]efinitions, exclusions, conditions and endorsements [that] are necessary provisions in insurance policies," and it does not give rise to an ambiguity requiring coverage to be construed in favor of the insured.

For the reasons discussed above, the Court finds that the Plaintiff was not injured by an "underinsured motor vehicle," as clearly and unambiguously defined in the Policy. The Court further finds that there is no other policy provision that injects ambiguity into the meaning of what is a covered "underinsured motor vehicle." Plaintiff is therefore not entitled to coverage under the UIM provision of the Policy.

**IT IS HEREBY ORDERED** that Defendant's motion for summary judgment [Doc. 22] is **GRANTED** and Plaintiff's motion for partial summary judgment [Doc. 25] is **DENIED**.

An appropriate judgment shall accompany this Memorandum and Order.

Dated this 7th day of February, 2018.

NANNETTE A. BAKER
UNITED STATES MAGISTRATE JUDGE